USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/8/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

 DRAKE WIDLAKE,

                            Plaintiff,               **ORDER**

        -against-                         **1:16-cv-08129 (KHP)**

PELOTON INTERACTIVE, INC. AND PELTON
INTERACTIVE LLC,

                             Defendants.

-----------------------------------------------------------------X

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

This matter is before me on the parties' joint application to approve the parties'

settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015),

*cert. denied*, 136 S. Ct. 824, 193 L. Ed. 2d 718 (2016), to the extent it waives claims under the

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA").

    **I.**       **Facts**

Defendant Peloton Interactive, Inc. ("Peloton") sells a stationary exercise bicycle that

comes with a computer monitor. Through a Wi-Fi connection, customers can connect to live

spin classes from a physical cycling studio in New York City or re-play past spin classes on

demand from a library of spin class videos. The company also offers non-biking videos. As a

motivational tool, customers compete with others who have watched or watch the same class.

Rankings are posted on a leaderboard which is updated continuously.

Plaintiff Drake Widlake worked for Peloton from April 15, 2014 through August 26, 2015, first as a Production Technician, then as a Lead Production Technician and, finally, as a Production Manager. His responsibilities included preparing for broadcast and recording of spin classes, recording and live streaming spin classes, and preparing and uploading the broadcast to Peloton's on-demand library of classes. He was paid on an hourly basis from April through October, after which he was paid on a salary basis. He contends that his primary duties did not change even after his position and pay changed.

Plaintiff asserts that he was improperly classified as exempt from federal and state overtime pay laws from October 1, 2014 through August 2015 and, consequently, never paid overtime for hours worked over 40 in a week during that time. He also asserts that during his entire period of employment he was never paid spread of hours pay for any day during which he worked over 10 hours, and was not provided proper wage notice or pay statements, as required under New York Labor Law Section 195 ("NYLL").

Peloton vigorously disputes that Plaintiff was misclassified as exempt during the time he was a Production Manager. It states that Widlake's primary duty in that position was management of the Production Department and its 4-6 Production Technicians. It also contends that because Widlake received a high salary and an effective hourly rate well in excess of the minimum wage, he was not entitled to spread of hours compensation. *See Almeida v. Aguinaga*, 500 F. Supp. 2d 366, 369-70 (S.D.N.Y. 2007). Finally, it contends that it substantially complied with NYLL notice requirements in its offer letter, which Widlake countersigned.

In addition to its defenses on the merits, Peloton disputes Widlake's representation of his hours worked. According to Widlake, he is owed $42,201 in unpaid wages. Peloton concedes

that it owes Widlake $3,366.01 for overtime worked when Widlake was classified as non-exempt. As noted above, Peloton contends nothing is owed for the period when Widlake was a manager and that, even if Widlake were successful in proving that he was misclassified, based on a review of the schedules and Widlake's own text messages reporting when he left work, he did not work anywhere near the hours he contends he worked.

The parties engaged in fulsome discovery and exchanged information about Widlake's responsibilities, hours worked, pay, and other relevant issues. They appeared twice before this Court to discuss settlement, including at a full day settlement conference on March 24, 2017, which resulted in a settlement.

## II.     Settlement Terms

Under the terms of the settlement, Peloton will pay a settlement in the total gross sum of $80,000 allocated as follows:  (i) $26,584.50 in respect of unpaid wages and overtime compensation; (ii) $26,584.50 in respect of liquidated damages; and (iii) $26,831 in respect of Widlake's attorneys' fees. The settlement agreement provides for a release of all wage and hour claims that were or could have been brought in connection with Widlake's employment with Peloton under federal, state, and local law, including claims for all compensation, liquidated damages, penalties, costs and attorneys' fees available under the law in connection with such claims.

Given the vigorous defense mounted by Peloton, the parties agree that Peloton is not admitting liability under the agreement, and that the settlement does not constitute an admission of liability. Rather, the settlement represents a compromise of a bona fide dispute concerning Widlake's wages. The parties also request that this Court retain jurisdiction over any

proceeding to enforce the settlement agreement, or otherwise arising out of the settlement agreement. Assuming Court approval of the settlement agreement, the parties stipulate to dismissal of this action with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) ("Rule 41").

### III.    Approval of the FLSA Settlement

The FLSA sets forth the minimum wage and overtime that an employee must be paid, as well as specific exemptions from its requirements. The U.S. Supreme Court recognized that the statute was designed to protect "certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being." *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 706 (1945). Since then, courts have recognized the unique policy considerations underlying the FLSA and the importance of deterring employers from exerting undue pressure on low wage employees to compromise valid wage claims. Citing these concerns, the Second Circuit has held that settlements of FLSA claims in which the parties terminate the action via a stipulation of dismissal pursuant to Rule 41 require approval of the district court to take effect. *Cheeks*, 796 F.3d at 206.

Court approval of an FLSA settlement is appropriate "when [the settlement] [is] reached as a result of contested litigation to resolve *bona fide* disputes." *Johnson v. Brennan*, No. 10-cv-4712 (CM), 2011 WL 4357376, at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Id.* (citations omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (parties must demonstrate settlement is "fair and reasonable").

There are five factors relevant to an assessment of the fairness of an FLSA settlement including: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.,* 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quoting *Medley v. Am. Cancer Soc.*, No. 10-cv-3214 (SDJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010) (other citations omitted)). The settlement here satisfies these criteria.

First, the settlement represents a fair compromise given Widlake's range of possible recovery. Widlake's maximum recovery for lost wages is $42,201, but he risks obtaining substantially less given the substantial dispute over his hours worked and exempt classification. The settlement effectively compensates Widlake for 100% of his claimed lost wages. The parties have allocated $26, 584.50 to Widlake's claimed lost wages and the same amount to liquidated damages. This allocation is a fair compromise and allocation because it provides Widlake with all of his lost wages for the period of his employment pre-October 2014 and nearly 70% of his alleged lost wages for the period when he was paid a salary and classified as exempt, plus an equal amount in liquidated damages.

With respect to the second and third factors, the settlement will entirely avoid the burden, risks, expense, and aggravation of continued litigation. Given the factual disputes over Widlake's exempt classification and hours worked, the parties faced substantial additional litigation costs and risks associated with additional discovery, motion practice, and trial. These

costs and risks are fully avoided by settlement. Though Widlake would offer his own testimony concerning his hours worked and duties, Peloton was prepared to introduce detailed evidence of Widlake's text messages showing that on many occasions he left the workplace earlier than he contends he did. It was also prepared to present testimony of others that Widlake did not come into work as early as he reported. Finally, with respect to whether Widlake was properly classified after October 1, 2014, Peloton was prepared to introduce evidence that Widlake created the work schedule for Production Technicians, conducted performance evaluations, interviewed and trained Production Technicians and made recommendations as to hiring, pay, and promotions that were given substantial weight. Thus, it is not at all clear whether Widlake would have recovered the full or even a substantial amount of what he sought in lost wages.

Fourth, because I presided over the settlement negotiations, I know that the settlement is the product of arm's-length bargaining between experienced counsel. Fifth, there are no factors here that suggest the existence of fraud. The settlement was reached after protracted negotiations and exchange of plaintiff's time records and other pertinent documents.

The settlement agreement's terms are consistent with terms approved by courts in the Second Circuit. The release is permissible in scope and there are no other provisions that undermine the purposes or policy behind the FLSA. *See, e.g., Santos v. Yellowstone Props., Inc.*, No. 15-cv-3986 (PAE), 2016 WL 2757427 at *1, 3 (S.D.N.Y. May 10, 2016); *Hyun v. Ippudo USA Holdings*, No. 14-cv-8706 (AJN), 2016 WL 1222347 at *3-4 (S.D.N.Y. Mar. 24, 2016).

Finally, the settlement agreement provides that one-third of the settlement fund will be paid to plaintiff's counsel as a contingency fee and costs. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. *See Santos v. EL Tepeyac Butcher Shop Inc.*, No. 15-

cv-814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (citing *Thornhill v. CVS Pharm., Inc.*, No. 13-cv- 507 (JMF), 2014 WL 1100135 at *3 (S.D.N.Y. Mar. 20, 2014)); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-cv-3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013); *Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012); *Palacio v. E*TRADE Fin. Corp.*, No. 10-cv-4030 (LAP) (DCF), 2012 WL 2384419 at *6-7 (S.D.N.Y. June 22, 2012).

In assessing the reasonableness of the proposed attorneys' fee allocation, the Court also considers the "lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Stancyzk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014). Lead counsel in the Southern District of New York typically charge between $300 and $400 per hour in wage-and-hour cases, and courts have approved hourly rates as high as $450. *Rodriguez-Hernandez v. K Bread & Company, Inc.,* No. 15-cv-6848 (KBF), 2017 WL 2266874, at *6 (S.D.N.Y. May 23, 2017) (collecting cases). A review of the billing statements submitted by Plaintiff's counsel, who has 34 years of litigation experience with a focus on employment litigation, demonstrates that he and his colleagues spent approximately 60 hours prosecuting this matter. Plaintiff's counsel typically charges $450 per hour.  At that rate, the amount allocated to attorneys' fees is less than the lodestar amount. At $400 per hour, the amount allocated to attorneys' fees is slightly in excess of the lodestar amount. Nevertheless, in light of the difficulty of the issues and risk undertaken by counsel, as well as the result achieved for Mr. Widlake, this Court finds the amount allocated to attorneys' fees is reasonable.

**IV.     Conclusion**

For all the reasons set forth above, this Court approves the settlement in this matter.

Accordingly, this action is dismissed with prejudice and without costs. The Clerk of the Court is

respectfully requested to mark this matter closed.

SO ORDERED.

Dated:     June 8, 2017
           New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge